1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7

8  | JOHN B.,

9  |                        Plaintiff,              Case No. C21-5728-SKV

10 |    v.                                         ORDER AFFIRMING THE
                                                   COMMISSIONER'S DECISION
11 | COMMISSIONER OF SOCIAL SECURITY,

12 |                        Defendant.

13

14       Plaintiff seeks review of the denial of his applications for Supplemental Security Income

15  (SSI) and Disability Insurance Benefits (DIB).  Having considered the ALJ's decision, the

16  administrative record (AR), and all memoranda of record, the Court AFFIRMS the

17  Commissioner's final decision and DISMISSES the case with prejudice.

18                                    **BACKGROUND**

19       Plaintiff was born in 1979, has at least a high school education, and has worked as a

20  construction framer, acoustical carpenter, shipping and receiving clerk, and diesel mechanic.  AR

21  23.  Plaintiff was last gainfully employed in the second quarter of 2018.  AR 17.

22       On March 11, 2019, Plaintiff applied for DIB, alleging disability as of April 25, 2018.

23  AR 15, 183–84.  On August 7, 2019, Plaintiff applied for SSI, alleging the same disability onset

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 1

date.  AR 15, 188–204.  Plaintiff's applications were denied initially and on reconsideration, and

Plaintiff requested a hearing.  AR 69–78, 82–109, 130–31.  After the ALJ conducted a hearing

on December 3, 2020, the ALJ issued a decision finding Plaintiff not disabled.  AR 15–25.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since April 25, 2018, the alleged onset date.

**Step two**:  Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity (RFC)**:  Plaintiff can perform light work with additional restrictions.  He can lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk six hours in an eight-hour day, and sit six hours.  He can occasionally climb ramps and stairs, but never ladders, ropes, or scaffolds.  He can occasionally balance, stoop, kneel, crouch, or crawl.  He should avoid all concentrated exposure to vibration and avoid all exposure to workplace hazards.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 17–24.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

Commissioner's final decision.  AR 1–3.  Plaintiff appealed the final decision of the

Commissioner to this Court.  Dkt. 4.

//

//

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P., App. 1.

**LEGAL STANDARDS**

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on harmful legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

Substantial evidence is "more than a mere scintilla. It means - and means only - such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating symptom testimony, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

**DISCUSSION**

Plaintiff argues the ALJ erred by (1) finding Plaintiff did not have severe impairments related to his left knee, sleep issues, and obesity; (2) finding Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment; (3) rejecting as irrelevant the opinions of David Broderick, M.D.; and (4) discounting Plaintiff's symptom

testimony when assessing his RFC.  The Commissioner argues the ALJ's decision is free of

harmful legal error, supported by substantial evidence, and should be affirmed.

**A.      The ALJ Did Not Err in Finding Plaintiff's Left Knee Issues, Insomnia, and Obesity Were Not Severe Impairments**

Plaintiff argues the ALJ erred by failing to find severe impairments relating to his left

knee, insomnia, and obesity.  The step-two inquiry is "merely a threshold determination meant to

screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen*

*v. Yuckert*, 482 U.S. 137, 146–47 (1987)).  At step two, the ALJ must determine if the claimant

suffers from any impairments that are "severe." 20 C.F.R. §§ 404.1520(c), 416.920(c).  "An

impairment or combination of impairments may be found 'not severe only if the evidence

establishes a slight abnormality that has no more than a minimal effect on an individual's

work.'" *Webb v. Barnhart*, 433 F.3d 683, 686–87 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80

F.3d 1273, 1290 (9th Cir. 1996)).  As long as the claimant has at least one severe impairment, the

disability inquiry moves on to step three.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

Plaintiff has failed to show the ALJ harmfully erred in finding he did not have a severe

impairment of his left knee.  *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing

*Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding that the party challenging an

administrative decision bears the burden of proving harmful error).  The ALJ reasonably noted

Plaintiff had undergone knee surgery in February 2011, over seven years before the alleged onset

date.  AR 18, 749.  The ALJ also noted there was "little to no treatment or complaints near or

after the alleged onset date." AR 18, 646.  Plaintiff worked during the time between his knee

surgery and the alleged onset date, and thus the ALJ's finding that Plaintiff's left knee pain was

not a severe impairment—meaning it had no more than a minimal effect on his work—was

supported by substantial evidence.

1    Plaintiff has similarly failed to show the ALJ harmfully erred in finding insomnia and

2    obesity were not severe impairments.  Plaintiff has not set forth credible evidence supporting the

3    existence of any functional limitations attributable to insomnia or obesity that the ALJ failed to

4    properly evaluate.  *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) ("Burch has not set

5    forth, and there is no evidence in the record, of any functional limitations as a result of her

6    obesity that the ALJ failed to consider.").  As the ALJ noted, Plaintiff often denied difficulty

7    sleeping.  AR 18, 674, 685, 694, 698.  And Plaintiff's body mass index, regardless of whether the

8    ALJ properly defined it, was not enough on its own to establish a severe impairment.  *See* Social

9    Security Ruling (SSR) 19-2P, 2019 WL 2374244, at *4 (May 20, 2019) ("No specific weight or

10   BMI establishes obesity as a 'severe' or 'not severe' impairment. . . .  We do an individualized

11   assessment of the effect of obesity on a person's functioning when deciding whether the

12   impairment is severe.").  Plaintiff has thus failed to show the ALJ harmfully erred at step two.

13       **B.       The ALJ Did Not Err in Finding Plaintiff Did Not Have a Listed Impairment**

14       Plaintiff argues the ALJ erred by failing to consider whether Plaintiff met Listing 1.03.

15   At step three of the disability evaluation process, the ALJ considers whether one or more of the

16   claimant's impairments meets or medically equals an impairment listed in 20 C.F.R. § 404,

17   Subpart P, Appendix 1 (the "Listings").  20 C.F.R. §§ 404.1520(d), 416.920(d).  "The listings

18   define impairments that would prevent an adult, regardless of his age, education, or work

19   experience, from performing *any* gainful activity, not just 'substantial gainful activity.'"

20   *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (emphasis in original; citations omitted).

21       Plaintiff bears the burden of proof at step three.  *Bowen*, 482 U.S. at 146 n.5.  To meet a

22   Listing, a claimant must show he meets "*all* of the specified medical criteria."  *Sullivan*, 493 U.S.

23   at 530.  To equal a Listing, "a claimant must establish symptoms, signs and laboratory findings

1    'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or,

2    if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's

3    impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099–1100 (quoting 20 C.F.R. § 404.1526).

4         To be found disabled under the version of Listing 1.03[3] in effect at the time of the ALJ's

5    decision here, Plaintiff must establish he (1) underwent reconstructive surgery or surgical

6    arthrodesis of a major weight-bearing joint, and (2) was unable to ambulate effectively, and

7    return to effective ambulation did not occur within 12 months of onset.  "Inability to ambulate

8    effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that

9    interferes very seriously with the individual's ability to independently initiate, sustain, or

10    complete activities."  Listing 1.00(B)(2)(b)(1).  Examples of ineffective ambulation include the

11    inability to walk without a walker, walk a block at a reasonable pace on rough or uneven

12    surfaces, use public transportation, and climb a few steps at a reasonable pace with the use of a

13    single handrail.  Listing 1.00(B)(2)(b)(2).

14         Plaintiff has failed to show harmful error.  First, although he testified to some issues

15    walking on uneven surfaces and climbing steps, he has not pointed to any *medical evidence*

16    showing he was unable to ambulate effectively due to his left knee pain.  *See Ford v. Saul*, 950

17    F.3d 1141, 1157 (9th Cir. 2020) (holding ALJ need not discuss whether impairment equals

18    Listing unless plaintiff presents evidence to establish equivalence); *cf. Mannion v. Comm'r of*

19    *Social Sec. Admin.*, 2017 WL 5598810 at *4 (D. Or. Nov. 21, 2017) ("Absent identification of

20

21

---

22    [3] The Commissioner revised the Listings related to musculoskeletal disorders effective April 2, 2021.
      *Revised Medical Criteria for Evaluating Musculoskeletal Disorders*, 85 Fed. Reg. 78164-01, 202 WL

23    7056412 (Dec. 3, 2020).  This was after the ALJ decision at issue here, and thus the prior version of those
      Listings applies.  The prior version is archived at Program Operations Manual System DI 34131.013,
      *available at* https://secure.ssa.gov/apps10/poms.nsf/lnx/0434121013.  All citations in this order refer to
      that version of the Listings.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 6

some medical evidence by Plaintiff that he satisfies *all* the listing criteria . . . the ALJ's failure to discuss it is harmless error at best.").

Second, the ALJ discussed Plaintiff's knee issues, albeit at step two, and determined the evidence did not support a finding of even a severe impairment.  As discussed above, the ALJ did not err in making that finding, as Plaintiff received little to no treatment for his knee near or after the alleged onset date.  The ALJ did not have to repeat that discussion in the step three section.  *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (holding ALJ did not have to make specific findings regarding Listings when ALJ elsewhere found Plaintiff's impairments were well-controlled by medication and Plaintiff was noncompliant with treatment).  Plaintiff has therefore failed to show the ALJ harmfully erred in finding Plaintiff did not meet a Listing.

## C.    The ALJ Did Not Err in Rejecting Dr. Broderick's Opinions

Plaintiff argues the ALJ erred in rejecting Dr. Broderick's opinions because they were meant to describe permanent limitations, and were thus temporally relevant.  Dr. Broderick examined Plaintiff in August 2011, and signed a report containing his opinions in September 2011.  AR 748–56.  Dr. Broderick opined Plaintiff had intermittent episodes of left knee pain.  AR 754.  He opined Plaintiff "would benefit from restrictions from repetitive squatting and kneeling, as this type of activity would, in all probability, aggravate his left knee complaints." *Id.*  Dr. Broderick opined Plaintiff would be able to perform his former work activities as a parts runner.  AR 756.

Plaintiff has failed to show the ALJ harmfully erred in addressing Dr. Broderick's opinions.  First, the ALJ reasonably noted Dr. Broderick's opinions were from approximately seven years prior to the alleged onset date, and therefore not temporally relevant.  *Carmickle v.*

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 7

1  *Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate

2  the alleged onset of disability are of limited relevance.").

3        Second, the RFC is consistent with Dr. Broderick's opinions, so the ALJ did not need to

4  give reasons for rejecting it.  *See Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223

5  (9th Cir. 2010) (holding ALJ need not provide reason for rejecting physician's opinions where

6  the ALJ incorporated opinions into RFC; ALJ incorporated opinions by assessing RFC

7  limitations "entirely consistent" with limitations assessed by physician).  Dr. Broderick opined

8  Plaintiff should be restricted from activities involving repetitive squatting and kneeling, and the

9  RFC limited Plaintiff to only occasional stooping, crouching, and crawling.  AR 19, 754.

10  Plaintiff has failed to show any appreciable difference between these limitations, and has

11  therefore failed to show harmful error.

12      **D.**    **The ALJ Did Not Err in Discounting Plaintiff's Symptom Testimony**

13        Plaintiff argues the ALJ erred by discounting Plaintiff's testimony when formulating the

14  RFC.  Plaintiff testified he has problems with balance and going up stairs due to back pain that

15  travels into his legs.  AR 45, 47, 262.  He testified he can sit for two to three minutes at times

16  before needing to stand up or adjust, and 20 to 30 minutes at other times.  AR 47, 262.  He

17  testified he can stand for 10 to 20 minutes at times, and at others cannot stand up due to back

18  spasms.  AR 48, 262.  He testified he has problems walking on uneven surfaces because of his

19  balance issues and pain.  AR 52, 257.  He testified he could probably walk a block on an uneven

20  surface.  AR 52, 262.

21        Plaintiff testified he still has limitations due to his knee injury in 2011.  *See* AR 49–50.

22  He testified he cannot kneel, squat, stoop, crouch, or crawl.  AR 50.  He testified he has to use a

23  handrail while going up or down stairs, and uses a cane from time to time.  AR 51, 263.

1     The Ninth Circuit has "established a two-step analysis for determining the extent to

2 which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664,

3 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective

4 medical evidence of an impairment that "'could reasonably be expected to produce the pain or

5 other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir.

6 2014)).  At this stage, the claimant need only show the impairment could reasonably have caused

7 some degree of the symptoms; he does not have to show the impairment could reasonably be

8 expected to cause the severity of the symptoms alleged.  *Id.*  The ALJ found Plaintiff met this

9 step because his medically determinable impairments could reasonably be expected to cause the

10 symptoms he alleged.  AR at 20.

11     If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ

12 may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for

13 doing so.  This is not an easy requirement to meet.'"  *Trevizo*, 871 F.3d at 678 (quoting

14 *Garrison*, 759 F.3d at 1014–15).  In evaluating the ALJ's determination at this step, the Court

15 may not substitute its judgment for that of the ALJ.  *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir.

16 1989).  As long as the ALJ's decision is supported by substantial evidence, it should stand, even

17 if some of the ALJ's reasons for discrediting a claimant's testimony fail.  *See Tonapetyan v.

18 Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

19     Plaintiff has failed to show the ALJ harmfully erred in rejecting his testimony regarding

20 his back pain.  As the ALJ noted, objective findings were relatively minimal.  AR 21.  Imaging

21 including MRIs showed minimal degenerative changes with small disc bulges or protrusions,

22 primarily at L4-L5.  AR 399–400, 512, 827.  Several providers also noted inconsistencies

23 between Plaintiff's presentation and the severity of his complaints.  One examiner noted Plaintiff

1    demonstrated more stability when not being tested, and "his active range of motion of the lumbar

2    spine is observed to be better when he is getting on and off the examining table, compared to

3    during formal testing." AR 647–48.  Another provider told Plaintiff he "ha[d] no explanation for

4    his persisting and worsening symptomatology.  The objective evidence does not establish a cause

5    for it." AR 679.  The ALJ's reasoning was accordingly supported by substantial evidence.

6          The ALJ's analysis of Plaintiff's back pain symptom testimony was not free from error,

7    but the errors were harmless.  The ALJ erred, for example, in finding Plaintiff received only

8    conservative treatment.  AR 21.  Plaintiff received multiple steroid injections for his back pain,

9    which, while short of surgery, are not considered conservative.  *See Garrison*, 759 F.3d at 1015

10   n.20 ("[W]e doubt that epidural steroid shots . . . qualify as 'conservative' medical treatment.").

11   The ALJ's errors were nonetheless harmless because they did not affect the ultimate

12   nondisability determination.  *Molina*, 674 F.3d at 1115.  The ALJ still gave valid reasons for

13   rejecting Plaintiff's testimony regarding his back pain, and the validity of those reasons is

14   unaffected by the invalidity of the ALJ's erroneous reasons.

15         Plaintiff has also failed to show the ALJ harmfully erred in rejecting Plaintiff's testimony

16   regarding the severity of his knee pain.  In his step two analysis, the ALJ noted Plaintiff had

17   received little to no treatment for his knee since the alleged onset date, and had made few to no

18   complaints in that time.  AR 18.  An ALJ may discount the claimant's testimony when the

19   "'level or frequency of treatment is inconsistent with the level of complaints.'"  *Molina*, 674 F.3d

20   at 1113 (quoting SSR 96–7p, 1996 WL 374186, at *7 (July 2, 1996)).[4]  Plaintiff has therefore

21   failed to show the ALJ harmfully erred in rejecting his symptom testimony.

22

23   _____

[4] SSR 96–7p has been superseded by SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017).  SSR 16–3p
nonetheless retains language providing that an ALJ may discount a claimant's testimony "if the frequency

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated 9th day of March, 2022.

S. KATE VAUGHAN
United States Magistrate Judge

---

or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints." *Id.* at *9.

ORDER AFFIRMING THE COMMISSIONER'S
DECISION - 11